UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FOREST L. FATE, SR.,

                      Plaintiff,                           **MEMORANDUM**
v.                                                  **OPINION AND ORDER**

JOULIANA PETRANKER, medical administrator
at the Rockland County Correction Facility, LOUIS              19-CV-05519 (PMH)
FALCO, Rockland County Sheriff, ED DAY,
Rockland County Commissioner, and CORRECT
CARE SOLUTIONS, LLC,

                      Defendants.
-----------------------------------------------------------------X
PHILIP M. HALPERN, United States District Judge:

      Plaintiff Forest L. Fate, who is proceeding *pro se* and *in forma pauperis*, brings claims

against Jouliana Petranker ("Nurse Petranker") medical administrator at the Rockland County

Correctional Facility, Rockland County Sheriff Louis Falco III ("Sheriff Falco"), Rockland County

Commissioner Ed Day ("Commissioner Day" and collectively the "Individual Defendants"), and

Correct Care Solutions, LLC ("CCS" and collectively "Defendants"). Given the liberal reading

required of Plaintiff's *pro se* Amended Complaint, Plaintiff asserts four claims for relief against

Defendants: (1) a *Monell* municipal liability claim pursuant to 42 U.S.C. § 1983, (2) a deliberate

indifference to Plaintiff's medical needs claim pursuant to 42 U.S.C. § 1983, (3) a claim under

Title II of the Americans with Disabilities Act ("ADA"), and (4) a medical malpractice claim under

New York state law.

      By motion dated March 25, 2020, Defendant CCS moved to dismiss Plaintiff's Amended

Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 51). By motion dated March 26, 2020, the

Individual Defendants, moved to partially dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(c).[1] (Doc. 58).

For the reasons set forth below, CCS's motions to dismiss and the Individual Defendants' motion for judgment on the pleadings are GRANTED.

## BACKGROUND

On June 7, 2019, Plaintiff commenced this action, and on August 20, 2019, Plaintiff filed an Amended Complaint. The facts recited below are taken from Plaintiff's Amended Complaint (Doc. 18, "Am. Compl.") and Plaintiff's Opposition to Defendants' motions to dismiss.[2] (Doc. 55, "Pl. Opp'n").

Plaintiff alleges that when he was arrested on January 4, 2019, his hearing aids and glasses were "misplaced" by the United States Marshals who arrested him. Am. Compl. at 4–5. Upon arrival at the Rockland County Jail (the "Jail") on March 14, 2019, Plaintiff allegedly informed the medical staff at the Jail about his medical conditions and that his hearing aids had been misplaced. *Id.* at 4. The medical staff raised these concerns with the Jail's medical administrator, Nurse Petranker. *Id.* Nurse Petranker allegedly informed Plaintiff that he could not receive hearing aids while at the Jail, because "the Jail doesn't have a contract with any hearing specialist in this

---

[1] The Individual Defendants do not move to dismiss Plaintiff's deliberate indifference claim against Nurse Petranker. *See generally* Docs. 58, 59, 63. The Individual Defendants only present argument regarding why the deliberate indifference claims against Commissioner Day and Sherriff Falco should be dismissed. *See* Doc. 59 at 6–10.

[2] In assessing the legal sufficiency of a claim in a *pro se* case, the court may consider additional facts a *pro se* Plaintiff raises in opposition to the Defendant's motion to dismiss "where those allegations are consistent with the allegations in the complaint." *Andino v. Fischer*, 698 F. Supp. 2d 362, 376 (S.D.N.Y. 2010); *see also Nisvis v. New York State Dep't of Corr. Servs.*, No. 11-CV-2004, 2013 WL 4757839, at *1 (S.D.N.Y. Sept. 4, 2013) ("In light of [plaintiff's] *pro se* status, the Court has also considered factual allegations contained in his papers opposing defendants' motion."). Thus, the Court considers facts alleged in Plaintiff's Amended Complaint as well as facts consistent with Plaintiff's allegations raised in his opposition to Defendants' motions to dismiss. Furthermore, on a motion to dismiss, "[t]he Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit." *Manley v. Utzinger*, No. 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011). Thus, the Court considers Plaintiff's medical records attached to his Amended Complaint which are integral to his allegations and relied on in his pleading.

area, and that [Plaintiff] could wait until [he] go[es] upstate or go[es] home" to receive hearing aids. *Id.* Plaintiff alleges that thereafter he told Nurse Petranker that his lack of hearing was causing him to miss meals and resulted in him being "placed on keep lock." *Id.*

On April 12, 2019, Plaintiff saw a doctor at the Jail who recommended that Plaintiff undergo audio testing. *Id.* After reviewing the audio test results, the doctor recommended that Plaintiff receive a hearing aid for his right ear. *Id.* at 7. Plaintiff was allegedly told that the hearing in his left ear is so poor that a hearing aid for that ear would be futile. *Id.* at 4. Plaintiff alleges that Nurse Petranker received the audio test results but refused to get Plaintiff a hearing aid or provide any "reasonable accommodations." *Id.* 4–5. Plaintiff also alleges that Nurse Petranker told him that she would put a hearing-impaired sign on his door so that he would avoid missing meals or be "keep locked." *Id*. at 5. Nurse Petranker apparently failed to put a hearing-impaired sign on the door and suggested that Plaintiff find someone who could help him keep track of time. *Id.* Furthermore, Plaintiff alleges that Nurse Petranker instructed the doctors at the Jail not to give Plaintiff a hearing aid because "she doesn't think [he] need[s] them anymore." *Id.*

Plaintiff alleges that it was "[o]nly when [he] wrote to the district court [that] Nurse [Petranker] sen[t] [him] out to the hospital audiologist, and then did a follow up with Cornerstone Family Care to fit [him] for a hearing aid." Pl. Opp'n at 3. Plaintiff alleges that he was then told he would receive his hearing aids within two weeks, but he never received them. *Id*.

Plaintiff states that he filed two grievances stating that he received inadequate medical care "with hopes that the sheriff's office would investigate" his concerns. *Id.* at 1. Plaintiff states that after not receiving any relief from the medical staff or through the grievance process, he wrote to Commissioner Day, to notify him about the "medical misconduct" at the Jail. *Id*. at 2. Plaintiff asserts that he requested that such conduct be investigated as he was being punished because of

his disability since he was missing meals and was not able to attend programs like the other pretrial prisoners because of his hearing impairment. *Id*. Plaintiff states that he received no response from Commissioner Day. *Id.*

Plaintiff further alleges that Sheriff Falco and the County were aware that "pretrial prisoners there at the Rockland County Jail were being neglected by the medical department" and references a different action in which Sheriff Falco, Nurse Petranker and other employees of the Jail were alleged to be deliberately indifferent to an inmate's serious medical needs. *Id.* (citing *King v. Falco*, No. 16-CV-6315, 2018 WL 6510809 (S.D.N.Y. Dec. 11, 2018)).

Plaintiff alleges that Sheriff Falco, CCS, and Commissioner Day, were "aware of the problems . . . at the Rockland County Jail medical department and chose to not address the problems." *Id*. at 5. Plaintiff alleges that none of the nurses at the Jail would reveal their names, name tags, or who they worked for, and that he learned from his mental health case manager that they allegedly worked for CCS. *Id*.

## **STANDARD OF REVIEW**

### I.      Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of actions." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal,* 556 U.S. 662). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly,* 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (internal quotation marks omitted). Because *pro se* plaintiffs are often unfamiliar with the formalities of pleading requirements, courts must apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing the complaint of an individual represented by counsel. *Smith v. U.S. Dept. of Just. and Immigr. & Naturalization Serv.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Cappius,* 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case, [] 'although a court must accept as true all of the allegations contained in a complaint, that

5

tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009))).

The Court also has a duty to interpret the pleadings of a *pro se* plaintiff liberally "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

II.        Fed. R. Civ. P. 12(c)

The court may dismiss a complaint pursuant to a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). When addressing a motion for a judgment on the pleadings pursuant to Rule 12(c), the standard is "the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6)." *Rojas v. Berryhill*, 368 F. Supp. 3d 668, 669 (S.D.N.Y. 2019); *see also L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) (finding that the standard for determining the sufficiency of a pleading pursuant to Rule 12(c) is the same standard "applicable to dismissals pursuant to [Rule] 12(b)(6)."). "On a 12(c) motion, the Court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L–7 Designs, Inc.*, 647 F.33d at 422 (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2002)).

The same standard set forth previously herein regarding the flexibility afforded to *pro se* plaintiffs is applicable to a Rule 12(c) motion for a judgment on the pleadings. *Temple v. Hudson View Owners Corporation*, 222 F. Supp. 3d 318, 322 (S.D.N.Y. 2016).

## ANALYSIS

It is the Court's obligation to interpret the pleadings of a *pro se* Plaintiff liberally to raise the strongest arguments that they suggest. *See McPherson,* 174 F.3d at 280. Therefore, the Court construes Plaintiff's Amended Complaint as raising four claims for relief: (1) a *Monell* municipal liability claim pursuant to 42 U.S.C. § 1983; (2) a Fourteenth Amendment deliberate indifference claim pursuant to 42 U.S.C. § 1983;[3] (3) a claim under Title II of the ADA; and (4) a medical malpractice claim under New York state law. Because Plaintiff's Amended Complaint does not specify which claims are raised against which Defendants, the Court assumes Plaintiff intended to raise all claims against all Defendants. *See Ippolito v. Meisel*, 958 F. Supp. 155, 160 (S.D.N.Y. 1997) (treating "plaintiff's *pro se* complaint as attempting to bring claims against all defendants" where it was "unclear" which claims plaintiff intended to bring against which defendants).

### I.  Claims Against CCS

The Court will analyze seriatim Plaintiff's claims against CCS. First, the Court finds that Plaintiff has failed to state a claim for relief asserting *Monell* municipal liability against CCS.[4]

---

[3] At the motion to dismiss stage the Court must accept as true Plaintiff's allegations. Therefore, the Court assumes that Plaintiff was a pre-trial prisoner at the time of the alleged misconduct. *See* Pl. Opp'n at 2 (referring to himself as a "pre-trial prisoner"). A plaintiff's claim that jail officials were deliberately indifferent to his serious medical needs when the plaintiff was a pre-trial detainee is analyzed under the Fourteenth Amendment. *See King,* 2018 WL 6510809, at *7 (holding that a pre-trial detainees' claims of deliberate indifference related to inadequate medical care are "analyzed under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment."). However, the Court notes that there is evidence in the record that, at some point, Plaintiff was either convicted or plead guilty. (*See* Doc. 21) ("[A] week ago, Plaintiff was transported to Downstate Correctional Facility ("Downstate") to complete a three-year sentence."). If Plaintiff was an inmate at the time of the alleged misconduct his claim that jail officials were deliberately indifferent to his medical needs would be analyzed under the Eighth Amendment. *See King,* 2018 WL 6510809, at *7. The Court finds, at this stage, Plaintiff's status as a pre-trial detainee or inmate is irrelevant as the standard applied by the Court to determine whether Plaintiff's deliberate indifference claim can survive Defendants' motions to dismiss is the same under the Eighth or Fourteenth Amendment. *See Carno v. United States*, No. 17-CV-7998, 2019 WL 2287966, at *11 (S.D.Y.Y. May 28, 2019), *reconsideration denied sub nom*. *Carno v. Correct Care Inc.,* No. 17-CV-7998, 2019 WL 3080834 (S.D.N.Y. July 12, 2019) (holding that the Eighth Amendment and Fourteenth Amendment "standards [are] the same regardless of which amendment's prism the court looks through.").

[4] "[T]he Court assumes CCS . . . to be a state actor[] such that *Monell* would apply to th[is] private entit[y] providing medical care to state inmates. Various courts in the Second Circuit have adopted this approach." *Melvin v. Cty. of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *12 (S.D.N.Y. Mar. 29, 2016) (collecting cases).

a.    *Monell* Claim

Section 1983 permits a Plaintiff to assert a claim against a municipality pursuant to *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 660 (1978). The Court in *Monell* held that a municipality can be liable under § 1983 if a Plaintiff proves that "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. A plaintiff can state a *Monell* claim by alleging, and ultimately proving, three things: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983)).

Proof of the existence of a municipal policy or custom is required because a plaintiff must demonstrate that "the municipality took some action beyond merely employing the [allegedly] misbehaving officers." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 390 (S.D.N.Y. 2013) (quoting *Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985)). There are several ways in which a Plaintiff can demonstrate that an official policy or custom existed including:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Id.*

Here, Plaintiff fails to identify an official policy or custom maintained by CCS that allegedly subjected Plaintiff to a violation of his constitutional rights. In fact, Plaintiff makes scant mention of CCS in his Amended Complaint or opposition brief at all. Plaintiff lists CCS in the caption of his Amended Complaint but does not include any further mention of CCS in his

8

Amended Complaint. *See generally* Am. Compl. Plaintiff, in his opposition brief, states that he was unable to identify the names of the nurses at the jail who provided medical care to him, but that he learned from his mental health case manager that the nurses at the Jail were allegedly employed by CCS. Pl. Opp'n at 5. This single mention of CCS in Plaintiff's opposition brief is wholly insufficient for the Court to find that Plaintiff has alleged an official policy or custom maintained by CCS that subjected Plaintiff to a violation of his constitutional rights.

Plaintiff cites, in his opposition brief, another case in an apparent attempt to demonstrate that certain Defendants "w[ere] aware that pretrial prisoners at the Rockland County Jail were being neglected by the medical department." *Id.* at 4 (citing *King* 2018 WL 6510809). Reference to *King* does not help Plaintiff demonstrate an official policy maintained by CCS sufficient to establish *Monell* liability. The plaintiff in *King* alleged that he told Jail officials that he had "head and neck pain, hearing difficulties, ringing in the ears, and numbness in his feet and hands, and asked when he would see a neurologist," and that the treatment plaintiff received was inadequate. *Id.* at *2. However, the Plaintiff in *King* did not sue CCS and did not seek hearing aids. Plaintiff's reference to *King* in no way helps Plaintiff establish that CCS maintained an official policy that violated Plaintiff's rights or denied him access to adequate medical care. Accordingly, the *Monell* claim against CCS is dismissed.

      b.   Fourteenth Amendment Deliberate Indifference Claim

As to Plaintiff's Fourteenth Amendment claim against CCS brought pursuant to 42 U.S.C. § 1983, the Court finds that Plaintiff has failed to adequately allege that CCS was involved in the alleged constitutional deprivations. In order to state a cognizable claim under § 1983, the complaint must contain specific allegations of "personal involvement of defendants in [the] alleged constitutional deprivations." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (quoting, *Wright*

*v. Smith*, 21 F.3d 496, 501 (2d Cir.1994)); *see also Santiago v. Meinsen*, 89 F. Supp. 2d 435, 442 (S.D.N.Y. 2000) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 42 U.S.C. § 1983.").

While Plaintiff names CCS in the case caption of his Amended Complaint, Plaintiff does not mention CCS in the body of his Amended Complaint and makes only one mention of CCS in his opposition brief. Accordingly, because Plaintiff fails to allege facts indicating that CCS was involved in any violation of Plaintiff's Fourteenth Amendment rights to receive adequate medical care, the Fourteenth Amendment violation claim against CCS is dismissed.

Plaintiff's opposition brief indicates that he believes that the jail officials who provided allegedly inadequate care to Plaintiff were employed by CCS. Pl. Opp'n at 5. However, § 1983 liability cannot be premised on a theory of *respondeat superior*. *See Randle v. Alexander*, 960 F. Supp. 2d 457, 477 (S.D.N.Y. 2013). Accordingly, Plaintiff's allegation that he received inadequate medical treatment from people employed by CCS is insufficient to state a § 1983 claim against CCS.

c. ADA Claim

As to Plaintiff's ADA claim against CCS, the Court similarly finds Plaintiff's allegations insufficient to maintain such as claim against CCS. In order to prevail on an ADA claim, the plaintiff must plead and ultimately prove: "(1) that he is a 'qualified individual' with a disability, (2) that he was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to the disability." *Hadley v. City of N. Y.*, No. 15-CV-8231, 2017 WL 6729290 (S.D.N.Y. Oct. 4, 2017) (quoting *Hargave v. Vermont*, 340 F.3d 27 (2d Cir.2003)).

Because Plaintiff is a hearing-impaired inmate, he is considered a "qualified individual with a disability," and therefore satisfies the first element of the ADA claim. *See Clarkson v. Coughlin,* 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995) (holding that hearing-impaired inmates are considered "qualified individuals" under the ADA). Plaintiff does allege that he was excluded from participation in the Jail's services programs or activities. *See* Am. Compl. at 4 (alleging he was "missing meal[s], and getting placed on keep lock because of [his] hearing problems."); *see also* Pl. Opp'n at 2 (alleging he was not able "to attend programs like the other pretrial prisoners because of [his] hearing impairment"). However, Plaintiff does not allege that any actions taken by CCS resulted in his exclusion from these activities, and the Court therefore cannot conclude, based on Plaintiff's allegations, that CCS's conduct resulted in his exclusion from participation in the Jail's services, programs, or activities. In any event, as to the third ADA factor, Plaintiff has not alleged that any exclusion or discrimination was due to Plaintiff's disability. Therefore, Plaintiff's ADA claim against CCS must fail.

       d.   Medical Malpractice claim

CCS also argues that Plaintiff may be asserting a medical practice claim under state law. Under New York law, to state a medical malpractice claim "a plaintiff must set forth (1) the standard of care in the locality where the treatment occurred, (2) that the defendant breached that standard of care, and (3) that the breach was the proximate cause of his or her injuries." *Whitfield v. State*, 79 N.Y.S.3d 301, 303 (N.Y. App. Div. 2018) (quoting *Elkin v. Goodman*, 808 N.Y.S.2d 405, 408 (N.Y. App. Div. 2005)). Here, Plaintiff has not identified a standard of care under which CCS must operate or included any factual allegations regarding an alleged breach of that standard of care by CCS. Therefore, the Court finds that Plaintiff has not alleged a medical malpractice claim under New York law.

Accordingly, all claims against CCS are dismissed.

II.   <u>Claims Against Individual Defendants</u>

Just as with Plaintiff's claims against CCS, the Court construes Plaintiff's Amended Complaint to assert the same four claims for relief against the Individual Defendants in their individual and official capacities. For the reasons set forth below, the Individual Defendants' motion for judgment on the pleadings is granted.

a.   *Monell* Claims

Plaintiff cannot bring a *Monell* claim against the Individual Defendants because *Monell* municipal liability does not extend to individuals. *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 390 (S.D.N.Y. 2013) ("The Second Circuit has established a two-pronged test that a plaintiff must satisfy before recovering *from a municipality* under Section 1983.") (emphasis added). Accordingly, Plaintiff's *Monell* claims against the Individual Defendants must be dismissed.

As to Plaintiff's *Monell* claims against the Individual Defendants in their official capacities, such claims are akin to claims against the municipality. *See Perez v. Annucci*, No. 18-CV-147, 2019 WL 1227801, at *4 (S.D.N.Y. Mar. 15, 2019) ("[A] suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent.'" (quoting *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997))). Therefore, the *Monell* standard applies to Plaintiff's official capacity claims.

Just as with Plaintiff's *Monell* claim against CCS, the Court finds that Plaintiff has failed to identify an official policy, practice, or custom as is required by *Monell*. Because Plaintiff has failed to identify a municipal policy that led to his alleged constitutional violations, Plaintiff's official capacity *Monell* claims against the Individual Defendants fail.

12

b.  Fourteenth Amendment Deliberate Indifference Claims

Plaintiff's Fourteenth Amendment inadequate medical care claims against the Individual Defendants in their official capacities must fail because the Individual Defendants sued for monetary damages in their official capacities are protected by the Eleventh Amendment. *See Johnson v. Coombe*, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001) ("[G]overnment officials are immune from suit for money damages when sued in their official capacities" because "neither a State nor its officials acting in their official capacities are 'persons' under §1983." (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989))). Accordingly, Plaintiff's Fourteenth Amendment claims against the Individual Defendants sued in their official capacities are dismissed.[5]

Regarding the Fourteenth Amendment deliberate indifference claims against Sheriff Falco and Commissioner Day in their individual capacities, the Court finds that Plaintiff's allegations fail to demonstrate that these Defendants were personally involved in the allegedly wrongful conduct. The Supreme Court has held that the Eighth Amendment (also applicable to a Fourteenth Amendment analysis), which prohibits the infliction of "cruel and unusual punishment," is applicable to the treatment and conditions of confinement of prison inmates and that the state has a constitutional obligation to provide inmates with adequate medical care. *See Farmer v. Brennan,* 511 U.S. 825, 828, 832 (1994); *see also Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (finding that the same protection afforded by the Eighth Amendment to inmates has been extended to pre-trial detainees under the Fourteenth Amendment.).

---

[5] Plaintiff's request for injunctive relief, *see* Am. Compl. at 10 (requesting that "Nurse [Juliana] not be allowed to make decisions for doctors and that she not be allowed to neglect anyone whom has a medical disability of proper medical attention, or reasonable accommodations"), is moot. It is settled law in the Second Circuit that "a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996); *see also* Docs. 26, 69 (noting Plaintiff's change of address after transfer to new facility).

"To state a deliberate indifference claim under the Fourteenth Amendment, plaintiff's allegations must satisfy two prongs: an objective prong and a *mens rea* prong." See *King,* 2018 WL 6510809, at *7. Under the first prong, the inmate's medical needs must be objectively "serious." *See Flemming v. Velardi,* No. 02-CV-4133, 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003) (citing *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). To determine whether an inmate's medical needs are sufficiently serious, courts consider "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d 698, 701–02 (2d Cir. 1998) (internal quotations omitted).

Under the second prong, "the facts must give rise to an inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them." *Harrison v.  Barkley,* 219 F.3d 132, 137 (2d Cir. 2000). A plaintiff can demonstrate deliberate indifference by alleging facts that demonstrate that a defendant "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Chance*, 143 F.3d at 702 (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)); *see also Estelle*, 429 U.S. at 104 (finding that a plaintiff can demonstrate deliberate indifference by alleging that a defendant "intentionally den[ied] or delay[ed] access to medical care or intentionally interfere[ed] with the treatment once proscribed.").

In addition, and as previously stated herein, to adequately plead a claim pursuant to § 1983, a plaintiff's complaint must contain specific allegations of "personal involvement of defendants in [the] alleged constitutional deprivations." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting, *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994)); *see also Santiago v. Meinsen*, 89 F.

14

Supp. 2d 435, 442 (S.D.N.Y. 2000) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 42 U.S.C. § 1983.").

The Court finds that Plaintiff has not adequately pled that Sherriff Falco and Commissioner Day were personally involved in causing any alleged violation of Plaintiff's Fourteenth Amendment rights. Plaintiff's Complaint focuses almost exclusively on allegations related to Nurse Petranker. Plaintiff's opposition to Defendants' motion to dismiss does include a few allegations specific to Sheriff Falco and Commissioner Day including that: (1) Plaintiff wrote to Commissioner Day to make him aware "of the medical misconduct at the Rockland County Jail and requested that it be investigated," Pl. Opp'n at 2, (2) Plaintiff got no response from Commissioner Day's office related to him complaints about inadequate medical care, *id.*, and (3) because of a similar lawsuit, "Sheriff Falco and the County was [sic] aware that pre-trial prisoners there at the Rockland County Jail were being neglected by the medical department," *id.*  None of these allegations indicate that Commissioner Day or Sheriff Falco were personally involved in the conduct—the denial of hearing aids—which forms the basis of Plaintiff's Fourteenth Amendment violation claim.  Accordingly, since a § 1983 claim cannot exist against a Defendant not personally involved in the allegedly wrongful conduct, the Fourteenth Amendment violation claims against Sheriff Falco and Commissioner Day must be dismissed.

c.   ADA Claims

The Individual Defendants also seek dismissal of Plaintiff's ADA claims brought pursuant to Title II. As an initial matter, Plaintiff's Title II ADA claims against the Individual Defendants sued in their individual capacities are barred because "Title II of the ADA . . . [does not] provide[] for individual capacity suits against state officials. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of*

*Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (citing *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir.2000)).[6]

A plaintiff, in order to properly plead an ADA claim, must demonstrate "(1) that he is a 'qualified individual' with a disability, (2) that he was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to the disability." *Hadley v. City of N.Y.*, No. 15-CV-8231, 2017 WL 6729290 (S.D.N.Y. Oct. 4, 2017) (quoting *Hargave v. Vermont*, 340 F.3d 27 (2d Cir. 2003)). Regarding the third element, the "disabled plaintiff [must] allege that his or her mistreatment 'was motivated by either discriminatory animus or ill will due to disability.'" *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) (quoting *Garcia*, 280 F.3d at 112).

As already separately stated herein, Plaintiff is a qualified individual under the ADA. Plaintiff has also alleged that he was not able to participate in certain activities in the Jail. *See* Am. Compl. at 4 (alleging he was "missing meal[s], and getting placed on keep lock because of [his] hearing problems."); *see also* Pl. Opp'n at 2 (alleging he was not able "to attend programs like the other pretrial prisoners because of [his] hearing impairment").

However, as to the third element, Plaintiff has not alleged any facts that indicate that the alleged mistreatment "was motivated by either discriminatory animus or ill will due to disability." Plaintiff alleges that he was informed by Nurse Petranker that he could not receive hearing aids while at the Jail, because "the Jail doesn't have a contract with any hearing specialist in this area,

---

[6] As to Plaintiff's ADA claims against the Individual Defendants sued in their official capacities, the courts in the Southern District of New York "have disagreed over whether a defendant is subject to suit under the ADA . . . in the Defendant's official capacity." *Crosby v. Petermann*, No. 18-CV-9470, 2020 WL 1434932, at *11 (S.D.N.Y. Mar. 24, 2020) (citing *Scalercio-Isenberg v. Port Auth. of New York*, No. 16-CV-8494, 2018 WL 1633767, at *5 (S.D.N.Y. Mar. 31, 2018)). The Court finds it is not necessary to resolve this issue at this time as Plaintiff has failed to state an ADA claim against the Individual Defendants in their official capacities even if such a claim were permissible.

and that [Plaintiff] could wait until [he] go[es] upstate or go[es] home" to receive hearing aids. Am. Compl. at 4. Plaintiff further alleges that Nurse Petranker, "instructed the doctors here not to send me out to get hearing aids because she doesn't think I need them anymore." *Id.* at 5; *see also* Pl. Opp'n at 3 (alleging that Nurse Petranker believed "there was no need for hearing aids"). Plaintiff, therefore, offers two reasons why he believes Nurse Petranker did not facilitate Plaintiff receiving hearing aids: (1) Nurse Petranker told Plaintiff that the Jail "doesn't have a contract with any hearing specialist in this area," and/or (2) that Nurse Petranker believed that Plaintiff did not need hearing aids. Plaintiff simply does not allege that Nurse Petranker's conduct "was motivated by either discriminatory animus or ill will due to disability." *See Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) ("Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability.").

Accordingly, the Court finds that Plaintiff has failed to state an ADA claim against Nurse Petranker.

As to Plaintiff's ADA claims against Commissioner Day and Sherriff Falco, Plaintiff's few allegations against Commissioner Day and Sherriff Falco do not demonstrate that these Defendants were involved with the treatment of Plaintiff at the Jail. Accordingly, the official capacity ADA claims against Commissioner Falco and Sherriff Day are dismissed.

d.   Medical Malpractice claims

As discussed above, to state a medical malpractice claim under New York law, "a plaintiff must set forth (1) the standard of care in the locality where the treatment occurred, (2) that the defendant breached that standard of care, and (3) that the breach was the proximate cause of his or her injuries." *Whitfield*, 79 N.Y.S.3d at 303 (quoting *Elkin*, 808 N.Y.S.2d at 408). Plaintiff's

17

allegations related to Sheriff Falco and Commissioner Day are unrelated to the medical treatment Plaintiff received while at the Jail. As to Nurse Petranker, Plaintiff simply does not identify any standard of care allegedly breached by Nurse Petranker. Accordingly, the Court finds that Plaintiff has failed to state a claim for medical malpractice against any of the Individual Defendants.

## **CONCLUSION**

Based on the foregoing, the Defendants' motions to dismiss and for judgment on the pleadings are GRANTED without prejudice. The only remaining claim is Plaintiff's Fourteenth Amendment deliberate indifference claim against Nurse Petranker. Nurse Petranker is directed to file an answer to Plaintiff's Amended Complaint within 30 days of the date of this Order.

Plaintiff may file a second amended complaint, addressing the pleading deficiencies discussed herein within 30 days of the date of this Order. Plaintiff is reminded that if he does choose to file a second amended complaint, the second amended complaint will completely replace, not supplement, the original complaint, and any facts or claims that Plaintiff wishes to maintain must be included in the second amended complaint. In the event that Plaintiff does not file a second amended complaint within 30 days, this case will proceed on the deliberate indifference theory asserted against Nurse Petranker.

Defendants are instructed to mail a copy of this Order to Plaintiff and provide proof of service on the docket. The Clerk is instructed to terminate Docs. 51 and 58.

SO ORDERED.

Dated: New York, NY
July 6, 2020

_____
Philip M. Halpern, U.S.D.J.

18