UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FOREST FATE,

                              Plaintiff,

              -against-

PETRANKER,

                              Defendant.

**MEMORANDUM OPINION
AND ORDER**

19-CV-05519 (PMH)

PHILIP M. HALPERN, United States District Judge:

Forest Fate, Sr. ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against, amongst others, Jouliana Petranker ("Defendant"), the medical administrator at Rockland County Correctional Facility ("Rockland"). (Doc. 18, "Am. Compl.").[1] Plaintiff alleges that Defendant was deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments. (*See generally id*.).

Plaintiff commenced this action on June 7, 2019 with the filing of a single-page letter, which sought the Court's intervention in obtaining a hearing aid from prison officials. (Doc. 1). Plaintiff filed an Amended Complaint, the operative pleading, on August 20, 2019. (*See* Am. Compl.). Defendant, with her former co-defendants, filed an Answer on September 10, 2019. (Doc. 19). Judge Román, before whom this case proceeded prior to reassignment to this Court on April 3, 2020, granted Defendant and her former co-defendants leave to file a motion under Federal Rule of Civil Procedure 12(c) on February 12, 2020. (Doc. 45). That motion, in which Defendant and her former co-defendants moved to dismiss all of Plaintiff's claims except for the deliberate indifference claim, was fully submitted on March 26, 2020. (Docs. 58-60). This Court, on July 6,

---

[1] Citations to the Amended Complaint correspond to the pagination generated by ECF.

2020, granted the motion in its entirety, allowing only the deliberate indifference claim against Defendant to proceed into discovery. (Doc. 70).

Discovery was completed on August 5, 2021. (Doc. 76). Defendant filed a motion for summary judgment, in accordance with the briefing schedule set by the Court, on February 24, 2022. (Doc. 128; Doc. 129; Doc. 130, "Def. Br."; Doc. 131, "Def. 56.1"; Doc. 132, "Def. Decl."; Doc. 133, "Bernstein Decl."; Doc. 134, "Piacente Decl."; Doc. 135, "Weissman Decl."). Plaintiff, on March 17, 2022, requested a 90-day extension of time to file opposition to Defendant's motion. (Doc. 137). The Court granted Plaintiff's request in part and extended his time to file an opposition to April 29, 2022. (Doc. 139). Plaintiff never filed opposition papers. The Court, therefore, deems Defendant's motion for summary judgment fully submitted and unopposed as of the timely filing of Defendant's reply brief on May 13, 2022. (Doc. 142, "Reply").

Plaintiff did, however, file responses to Defendant's Rule 56.1 Statement on January 24, 2022, which the Court, in its discretion, construes as a Rule 56.1 Counterstatement even though it is unsworn and was filed prior to the filing of Defendant's motion.[2] (Doc. 119, "56.1 Cntr."). The Court, however, considers only those responses in the Counterstatement that are supported by admissible record evidence to controvert the factual statements set forth in Defendant's 56.1 Statement. Statements made by Defendant that are supported by admissible evidence and not refuted by Plaintiff are deemed admitted. *See Mirza v. Garnet Health*, No. 20-CV-00556, 2022

---

[2] *See Vasquez v. Yadali*, No. 16-CV-00895, 2022 WL 1597693, at *2 n.6 (S.D.N.Y. May 19, 2022) (considering the substance of the plaintiff's arguments in various filings as responses to the defendants' Rule 56.1 statement, even though the plaintiff did not submit a statement of his own); *Casanova v. Maldonado*, No. 17-CV-01466, 2021 WL 3621686, at *2 n.4 (S.D.N.Y. Aug. 16, 2021) (same, noting that "[w]hile *pro se* litigants are . . . not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 Statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (quoting *Wiggins v. Griffin*, No. 18-CV-07559, 2021 WL 706720, at *1 n.1 (S.D.N.Y. Feb. 22, 2021) (alterations in original))).

WL 826410, at *2 n.6 (S.D.N.Y. Mar. 17, 2022) ("[S]tatements in the 56.1 Counterstatement supported by admissible evidence and not refuted with citation to admissible evidence provided to the Court are deemed admitted.").[3]

For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion and draws them from: (1) the Amended Complaint; (2) Defendants' Rule 56.1 Statement; (3) Plaintiff's Rule 56.1 Counterstatement; (4) Robert B. Weissman's Declaration, along with the exhibits annexed thereto, which includes, *inter alia*, a transcript of Plaintiff's deposition, conducted on April 26, 2021 (Doc. 135-3, "Pltf. Dep."); (5) Defendant's Declaration; (6) Dr. Jill Bernstein's Declaration; and (7) Dr. Dominick Piacente's Declaration.

Plaintiff's claims arise from the failure of Defendant to provide to him—while incarcerated at Rockland—a hearing aid. (Am. Compl. at 4-5). Plaintiff was transferred to Rockland on March 14, 2019, after being held at Nash County Jail in North Carolina.[4] (Def. 56.1 ¶ 15). On August 20, 2019, Plaintiff pled guilty in New York State court, was sentenced in connection with the charges against him, and was thereafter transferred to Downstate Correctional Facility on September 12, 2019. (*Id.* ¶ 86). Plaintiff was thus a pretrial detainee while at Rockland from March 14, 2019 to August 20, 2019 and a convicted felon at Rockland from August 20, 2019 to September 12, 2019. (*See* Def. Br. at 8-9). Defendant was, at all relevant times, the Director of Correctional Health

---

[3] *See also Wilson v. Annucci*, No. 18-CV-00391, 2020 WL 1979210, at *3 (N.D.N.Y. Apr. 23, 2020) (noting that *pro se* plaintiffs opposing a motion for summary judgment are "required to submit admissible evidence"), *adopted by* 2020 WL 5229375 (N.D.N.Y. Sept. 2, 2020); Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

[4] Apparently, Plaintiff fled New York and was found and arrested in North Carolina. (Def. 56.1 ¶¶ 10-11).

Services at Rockland and an employee of Correct Care Solutions, the entity with which Rockland has a medical staffing contract. (Def. 56.1 ¶¶ 16, 18).

Defendant states that she "is not a treating medical provider at [Rockland] and does not have a medical degree or a nursing degree." (*Id*. ¶ 20; Petranker Decl. ¶¶ 2, 6). Plaintiff argues that he "is aware of the fact [Defendant] does not have a medical degree or nursing degree but has witnessed through direct and indirect means that [D]efendant on many occasions has acted in a role more consistent with a medical provider." (56.1 Cntr. at 2). Plaintiff, however, provides no evidentiary support for this claim and directly contradicted it in his deposition, wherein he admitted in response to Mr. Weissman's question that "[Defendant is] not a nurse or a doctor, right?" with the response: "Not that I know of, I don't know what she is, basically." (Pltf. Dep. at 84:14-17). It is, therefore, admitted that Defendant is not a treating medical provider at Rockland.

I.   <u>Medical Care Provided at Rockland</u>

Plaintiff first received medical care at Rockland on March 22, 2019, when Dr. Dominick Piacente ("Piacente") examined him after he had told a nurse that he had lost his hearing aids prior to being transferred to Rockland. (Def. 56.1 ¶¶ 27-29). Piacente noted that "patient is able to hear questions in normal volume . . . [h]e may have a hearing deficit but it is not affecting his ADLs (activities of daily living) in this institution." (*Id*. ¶ 29; Piacente Decl. ¶ 5). Piacente also prescribed Plaintiff ear drops for purported pain in his left ear, which he refused to take. (Def. 56.1 ¶¶ 30, 56, 70). While at Rockland, Plaintiff was sent to Good Samaritan Hospital ("Good Samaritan"), where he received multiple tests for his hearing, which ultimately provided conflicting results, but the physicians concluded that the results did not warrant a hearing aid. (Def. 56.1 ¶ 46; Bernstein Decl. ¶ 18). Defendant's medical expert, Dr. Jill Bernstein ("Bernstein"), states that "patients should not be fitted with hearing aids based on test results with only poor or fair reliability results because

doing so poses the risk of providing too much amplification and damaging the patient's hearing." (Bernstein Decl. ¶ 7). Piacente reviewed the audiogram taken at Good Samaritan and "concluded that, although Plaintiff may have a hearing deficit, it was not significant enough to interfere with his [ADLs], and he did not need a hearing aid." (Def. 56.1 ¶ 54 (citing Piacente Decl. ¶¶ 5, 8, 9)). While substituting for Piacente at Rockland, Dr. Kalpana Parghi ("Parghi") also examined Plaintiff and determined that a hearing aid was not warranted. (*Id*. ¶¶ 62-64). Dr. Parghi noted in Plaintiff's medical records that "[Plaintiff] [r]equests hearing aid consult. Discussed with administrator, was denied. Patient able to hear conversation in a room but has difficulty in a noisy environment." (*Id*. ¶ 64). Plaintiff argues as to this statement that "why would the doctor discuss a medical decision with [Defendant] . . . . This demonstrates how [Defendant] has gone out of bounds as to her job description . . . Dr. Parghi should have spoken with Dr. Piacente or another qualified provider." (56.1 Cntr. at 3-4). However, as Defendant points out, nothing in Parghi's notes indicated that Defendant made the decision to deny a hearing aid to Plaintiff, only that it was discussed. Moreover, even if Parghi consulted with Piacente—as Plaintiff argues—Piacente had already, on multiple occasions, determined that a hearing aid was unwarranted.

Defendant, at the direction of Chief of Corrections Karl Mueller ("Mueller"), sent Plaintiff for another hearing aid evaluation on August 22, 2019 by Dr. Benjamin Stanley ("Stanley") at Cornerstone Family Medicine ("Cornerstone"). (Def. 56.1 ¶¶ 72-74). Stanley, contrary to Piacente, deemed Plaintiff's results reliable enough to warrant the fitting of a right-sided hearing aid. (*Id*. ¶ 76). Thereafter, Defendant arranged for Plaintiff to be fitted for a hearing aid and authorized payment to Cornerstone for same. (*Id*. ¶ 84). Before the hearing aid was delivered, however, Plaintiff was transferred to Downstate Correctional Facility ("Downstate") on September 12, 2019.

(*Id*. ¶ 87). Dr. Bernstein's testimony on that score was that the typical delay between molding and delivering a hearing aid is two to four weeks. (Bernstein Decl. ¶ 42).

II.    Medical Care Provided After Rockland

Defendant, after Plaintiff's transfer, notified Downstate of his condition and was informed that Plaintiff would have to be re-examined at Downstate before being eligible for another fitting. (Def. 56.1 ¶¶ 88-89). Plaintiff, thereafter, was transferred to Five Points Correctional Facility ("Five Points"), and was seen on four occasions by medical providers at Downstate and Five Points. (*Id*. ¶¶ 91-100). Each of these examinations, including one examination resulting in an HL30 non-significant hearing loss diagnosis, determined that a hearing aid was not warranted. (*Id*.). Dr. Joseph Gullo at Five Points confirmed on November 18, 2020 that Plaintiff suffered from HL30 non-significant hearing loss and again denied him a hearing aid. (*Id*. ¶¶ 100-04). Plaintiff does not dispute either diagnosis of HL30 non-significant hearing loss. (56.1 Cntr. at 29, 32). The HL30 level, according to Bernstein, is the least severe hearing loss threshold under "New York State correctional service guidelines." (Def. 56.1 ¶ 43 (citing Bernstein Decl. ¶ 11)). "HL30 non-significant hearing loss does not meet the criteria for hearing aid coverage under Medicaid guidelines." (*Id*. ¶ 44 (citing Bernstein Decl. ¶ 12)).

This litigation followed.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F.

Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary

judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper").

The Court is, of course, mindful that "[p]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks

omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

## ANALYSIS

Plaintiff's claims proceed under 42 U.S.C. § 1983. That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Plaintiff alleges, by way of § 1983, that Defendant was deliberately indifferent to his serious medical needs.[5] The Court notes at this juncture that while a pretrial detainee's claim of medical indifference is governed by the strictures of the Fourteenth Amendment, the same claim advanced by a convicted prisoner is governed by the strictures of the Eighth Amendment. *See Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017). Plaintiff's claim, therefore, falls under the Fourteenth Amendment from March 14, 2019 to August 20, 2019 (i.e.,while he was a pretrial detainee), and the Eighth Amendment from August 20, 2019 to September 12, 2019 (i.e., while he was a convicted prisoner).

---

[5] Because Plaintiff failed to oppose Defendant's arguments on this claim, the Court could consider the claim for relief abandoned. *See Murtha v. New York State Gaming Comm'n*, No. 17-CV-10040, 2022 WL 784756, at *7 n.7 (S.D.N.Y. Mar. 15, 2022) (concluding that the plaintiff waived objection by failing to raise it in his opposition brief); *Leach v. King*, No. 16-CV-00861, 2018 WL 1514243, at *4 n.1 (D. Conn. Mar. 27, 2018) ("[B]ecause [the *pro se* plaintiff] has not addressed the merits of the arguments seeking dismissal of his claims for injunctive and declaratory relief, I can consider these claims abandoned."); *Harnage v. Faneuff*, No. 15-CV-01033, 2017 WL 6629297, at *8 n.3 (D. Conn. Nov. 29, 2017) ("As the [*pro se*] plaintiff has not addressed the merits of any retaliation claim based on the rejection of his grievances without disposition, the court also could have considered this claim abandoned."); *In re UBS AG Secs. Litig.*, No. 07-CV-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" arguments by its opponent that it fails to address). However, in deference to the *pro se* Plaintiff and because Plaintiff did file a Rule 56.1 Counterstatement that addressed issues relevant to this claim, the Court declines to deem the claim abandoned.

Under either the Eighth Amendment or Fourteenth Amendment, Plaintiff must prove both an objective and subjective prong to establish a claim of deliberate indifference to serious medical needs. *See Adamson v. Miller*, 808 F. App'x. 14, 17 (2d Cir. 2020) ("To establish an Eighth Amendment violation based on inadequate medical care, a prisoner must demonstrate both an objectively serious medical deprivation and a sufficiently culpable mental state on the part of the charged official."); *King v. Shinder*, No. 16-CV-06315, 2020 WL 4750294, at *6 (S.D.N.Y. Aug. 17, 2020) ("[T]o prevail on a Fourteenth Amendment claim alleging inadequate medical care, a plaintiff must prove an objective prong and a subjective prong."). Although the analysis under the subjective prong differs between paradigms, "[f]or both the Eighth and Fourteenth Amendments, the objective prong poses the same standard." *Horace v. Gibbs*, 802 Fed. App'x 11, 14 (2d Cir. 2020). As to the objective prong, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at 30 (internal quotation omitted).

There is no "static test" as to the objective prong of a medical indifference claim, but a medical condition can be "sufficiently serious" depending on "whether a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Horace*, 802 Fed. App'x at 14 (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (internal quotation omitted)); *see also Yancey v. Robertson*, 828 Fed. App'x 801, 803 (2d Cir. 2020) ("[T]he deprivation of medical care must be 'sufficiently serious' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists." (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994))).

The loss of hearing can form the basis of a constitutional violation claim because the "ability to hear is 'a basic human need affecting daily activity and sufficiently serious to warrant treatment by physicians.'" *Rennalls v. Alfredo*, No. 12-CV-05300, 2015 WL 5730332, at *11 (S.D.N.Y. Sept. 30, 2015) (quoting *Rosales v. Fischer*, No. 07-CV-10554, 2009 WL 928260, at *12 (S.D.N.Y. Mar. 31, 2009)). However, a plaintiff's hearing loss that is mild or not significant, does not rise to the level of a "serious medical need" triggering constitutional protections. *See, e.g.*, *Chavis v. vonHagn*, No. 02-CV-00119, 2009 WL 236060, at *43 (W.D.N.Y. Jan. 30, 2009) (finding that the plaintiff failed to satisfy the objective prong because he "offer[ed] nothing more than bald, conclusory allegations that he suffered from an extremely painful ear infection and further, that the ear infection resulted in a temporary (two week) loss of hearing"); *Smith v. Masterson*, 538 F. Supp. 2d 653, 659 (S.D.N.Y. 2008) (granting summary judgment because the "record has established that Smith has normal hearing" and therefore plaintiff failed to satisfy the objective prong of a deliberate indifference claim), *aff'd*, 353 F. App'x 505 (2d Cir. 2009). Judge Sweet, in a prior case brought by Plaintiff, considered at the motion to dismiss stage whether his hearing loss was sufficiently serious and held that "[w]hile loss of hearing may be sufficiently serious, Fate has only alleged HL30 non-significant hearing loss." *Fate v. Goord*, No. 11-CV-07493, 2012 WL 3104884, at *6 (S.D.N.Y. July 31, 2012). The undisputed facts here yield the same conclusion.

There is no genuine issue of material fact as to the seriousness of Plaintiff's condition. Here, like in *King*, it is undisputed that Plaintiff suffered only from HL30 non-significant hearing loss. (56.1 Cntr. at 29, 32). This Court, in *King*, held that a claim based on denial of a hearing aid to a plaintiff with HL30 non-significant hearing loss failed at the summary judgment stage because that plaintiff's medical condition was simply not sufficiently serious. *King*, 2020 WL 4750294 at

*7 ("Plaintiff does not have a serious medical need concerning his hearing and therefore no constitutional violation can lie for failure to treat Plaintiff's hearing loss." (internal quotation marks omitted)). Plaintiff's bare assertion that he needs a hearing aid fails to raise a genuine issue of material fact where it is undisputed that his hearing loss was insignificant. *See id.* at *8 ("Plaintiff's assertion that he needs a hearing aid, unsupported by evidence in the record, is insufficient to defeat summary judgment for a deliberate indifference to medical needs claim."). Defendant is thus entitled to summary judgment on Plaintiff's claim that he was denied treatment for his hearing loss.

Moreover, to the extent the Amended Complaint can be read to complain of a delay in medical care—at some point after Stanley prescribed Plaintiff a hearing aid—Defendant is entitled to summary judgment under the objective prong of that claim as well. Giving Plaintiff all the solicitude a *pro se* plaintiff is entitled, because Plaintiff received treatment and a prescription for a hearing aid on August 22, 2019, the analysis under the objective prong for this theory depends on whether there was an unreasonable delay or interruption in treatment. *See Boomer v. Bentivegna*, No. 19-CV-04754, 2021 WL 1163658, at *3 (S.D.N.Y. Mar. 26, 2021) ("If, however, a plaintiff acknowledges that he received some medical care related to the underlying condition, but that the care he received was inadequate, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" (quoting *Salahuddin*, 467 F.3d at 280)). Defendant, on an unspecified day in August of 2019, received direction from Mueller to send Plaintiff for another hearing aid evaluation. (Def. 56.1 ¶¶ 72-74). Defendant complied and scheduled Plaintiff to be examined by Stanley on August 22, 2019. (*Id.* ¶ 74). Stanley prescribed a hearing aid for Plaintiff, which Defendant ordered for him.

(*Id.* ¶ 84). In short, Plaintiff received medical care in the form of a hearing aid prescription, even though the HL30 level was not sufficiently serious to *entitle* him to that treatment in the first place.

It takes two to four weeks for a hearing aid to be molded and delivered, (Bernstein Decl. ¶ 12), and during that time period, Plaintiff was transferred to another facility outside Defendant's purview. (Def. 56.1 ¶¶ 86-90). The hearing aid prescription did not follow Plaintiff to the new facility. (Def. 56.1 ¶ 88). Any delay was thus not unreasonable and therefore not sufficiently serious. *See Fate*, 2012 WL 3104884 at *6 (concluding that a "relatively modest delay in providing . . . a hearing aid" was not sufficiently serious.) Defendant is thus entitled, on the undisputed facts, to summary judgment on the objective prong for any claim based on a delay in medical treatment.

In light of the evidence produced and the absence of a genuine issue of material fact with respect to both the seriousness of Plaintiff's medical condition and to any delay in treatment, Defendant's motion for summary judgment is granted.[6]

---

[6] Given the conclusions reached herein as to the objective prong, the Court need not address the subjective prong under either Amendment. *See King*, 2020 WL 4750294 at *9 ("Because . . . Plaintiff cannot satisfy the objective prong of his deliberate indifference claim . . . [n]o purpose would be served by considering the remaining element of Plaintiff's claim—whether any Defendant acted intentionally or recklessly—as this analysis could not resurrect the fatal and undisputed flaw of Plaintiff's lack of serious medical condition."). The Court likewise need not and does not reach the issue of whether Defendant is entitled to qualified immunity.

## <u>CONCLUSION</u>

Defendant's motion for summary judgment is GRANTED and the Amended Complaint is

dismissed with prejudice.

The Clerk of the Court is respectfully directed to: (i) close this case; and (ii) mail a copy

of this Memorandum Opinion and Order to Plaintiff.


**SO ORDERED**:

Dated: White Plains, New York
     July 8, 2022

_____
Philip M. Halpern
United States District Judge